**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAKE CHARLES DIVISION**

| | |
|---|---|
| **JENNIFER SEMIEN** | **CASE NO. 2:26-CV-00706** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **ACUREN INSPECTION INC ET AL** | **MAGISTRATE JUDGE LEBLANC** |

<u>**MEMORANDUM RULING**</u>

Before the Court is "Defendants' Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)" (Doc. 3). Defendants, Connie Daigle and Melissa Brown (collectively referred to as "Individual Defendants") and Acuren Inspection, Inc. ("Acuren") move to be dismissed from this lawsuit for failure to state a claim.

<u>**BACKGROUND**</u>

Plaintiff Jenifer Semien (hereinafter, "Plaintiff") is an individual of the full age of majority and a domiciliary of Louisiana. Plaintiff, an African-American woman, alleges that she was the only African-American employee at the Sulphur, Louisiana, branch office of Defendant Acuren Inspection, Inc. (Doc 1, ¶ 9.) Semien was hired on or about April 8, 2024, as a Site Admin II and alleges that she consistently met performance expectations. (Doc. 1, ¶ 2) Defendants Connie Daigle and Melissa Brown are alleged to be white women employed by Acuren. Daigle is the Area Admin Lead for the Central Gulf Coast and Semien's supervisor. Brown is an HR Business Partner for the U.S. Gulf Coast. (Doc. 1, ¶¶ 3-4, 12.)

A little while prior to January 3, 2025, Semien alleges that she was assigned the full-time job duties of a white co-employee who had gone on maternity leave. The work she was tasked with primarily involved handling invoices for Westlake Corporation. (Doc. 1, ¶ 11.) According to the Complaint, this assignment was added to her own existing full-time duties, and no white co-employee was required to carry a comparable workload. (Doc. 1, ¶ 11.) In performing the additional work, Semien alleges that she discovered that Acuren technicians at Westlake were submitting late and inaccurate timesheets, which caused the invoicing deficiencies. She also alleges that she identified the technicians as the source of the problem to Daigle and requested assistance, but that her request was ignored. (Doc. 1, ¶ 12.)

Semien alleges that around January 3, 2025, Daigle contacted her and, while irate and screaming, blamed her for the timesheet and invoice problems rather than the technicians she contends actually caused them. (Doc. 1, ¶ 13.) On or about January 6, 2025, Daigle allegedly submitted Semien's annual evaluation containing false criticisms, including that Semien lacked sufficient knowledge of Excel, had a bad attitude that created a poor work environment, lacked the capability and willingness to perform her duties, and failed to properly allocate technician labor hours. (Doc. 1, ¶ 14.) Semien alleges that when she responded with contradictory evidence, she was ignored, and that other white coworkers in similar roles had not been responded to in that same manner. (Doc. 1, ¶ 14.)

On or about January 9, 2025, Daigle and Brown met with Semien regarding her performance and evaluation. During this evaluation Semien alleges that they accused her of deficient performance without evidence and spoke to her in a derogatory manner not

used with white employees. (Doc. 1, ¶ 15.) Around January 15, 2025, Daigle allegedly directed Semien to leave her daily work on Daigle's desk for Daigle to review. (Doc. 1, ¶ 16.)

After all these alleged occurrences took place, Semien alleges that other employees at Acuren, including Vickie Thomas, joined in multiple types of harassment including shouting at, scrutinizing, and insulting her in front of other employees. (Doc. 1, ¶ 17.) On or about January 21, 2025, Semien claims that she informed Brown of her intent to file a formal complaint against Daigle for racial discrimination and retaliation, and that Brown ignored it. (Doc. 1, ¶ 18.) About a week later, Semien' employment was terminated, which she alleges was because of her race, and in retaliation of her complaints. (Doc. 1, ¶¶ 19-20.)

The Complaint alleges that Semien exhausted her administrative remedies by filing a Charge of Discrimination against Acuren with the EEOC and the Louisiana Commission on Human Rights on July 18, 2025 (Charge No. 461-2025-02022). Semien received a Notice of Right to Sue around December 11, 2025, and filed this suit within ninety days. (Doc. 1, ¶ 8.) The Complaint invokes federal-question jurisdiction over the Title VII and § 1981 claims and supplemental jurisdiction over the state-law claims. (Doc. 1, ¶ 5.) Based on these allegations, Semien asserts claims for race discrimination and retaliation under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981, the Louisiana Employment Discrimination Law, La. R.S. 23:301 et seq., the Louisiana whistleblower statute, La. R.S. 23:967, and La. Civ. Code art. 2315. (Doc. 1, ¶¶ 22-24.) She seeks compensatory, punitive, and other damages, as well as injunctive relief and reinstatement. (Doc. 1, ¶ 25.)

Defendants moved to dismiss all claims under Federal Rule of Civil Procedure 12(b)(6). (Doc. 3.) Plaintiff opposed the motion (Doc. 7), and Defendants filed a reply (Doc. 8). In their reply, Defendants withdrew their request to dismiss Plaintiff's Title VII retaliation claim with respect to her termination, reserving the right to seek dismissal of that claim at a later stage. (Doc. 8 at 9.)

## LAW AND ANALYSIS

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* In assessing the motion, the court accepts all well- pleaded factual allegations as true and views them in the light most favorable to the plaintiff. *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009). The court need not, however accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678. Plausibility does not require probability, but it demands more than a sheer possibility that a defendant has acted unlawfully. *Id.*

Defendants maintain that: (1) the Complaint does not satisfy the statutory predicates for Louisiana Revised Statute 23:967, or transform ordinary employment disputes into Louisiana tort claims; (2) the Title VII and LEDL claims should be dismissed; (3) the § 1981 claims fail to plead a but-for race causation and intentional individual interference; (4) the hostile-work-environment claims fails to plead severe or pervasive, race-based

harassment; (5) the Louisiana whistleblower claim lacks an actual violation of state law; and (6) the claims plead under Louisiana Civil Code article 2315 fail as a matter of law.

*Individual Defendants, Connie Daigle and Melissa Brown*

The Individual Defendants move to be dismissed as to Plaintiff's claims under Title VII, the Louisiana Employment Discrimination Law ("LEDL"), 42 U.S.C. § 1981, and Louisiana Revised Statute 23:967 (the "Whistleblower" statute) because these statutes do not provide a cause of action against individuals in their capacity as coworkers.

Plaintiff concedes that with regard to Title VII and LEDL, the Fifth Circuit courts and Louisiana courts do not impose individual liability on supervisors or coworkers acting solely in their individual capacities. However, Plaintiff asserts that the Individual Defendants' conduct remains directly attributable to Acuren because the Complaint alleges they acted in their supervisory capacity within the scope and course of their employment.

Plaintiff suggests that dismissal is premature as discovery has not yet been conducted, particularly to clarify the scope of the Individual Defendant's authority and decision-making role. Defendants argue that the Complaint fails to plead facts to connect the alleged workplace events to race.

The Court agrees with Defendants and finds that Plaintiff's Title VII and LEDL claims against the Individual Defendants must be dismissed because the statute does not provide a cause of action against individuals in their capacity as co-workers.

*Section 1981*

Plaintiff maintains that Section 1981 is not limited solely to "employer" and that individual liability may attach where the Defendant was personally involved in intentional

race discrimination affecting contractual or employment rights.  Plaintiff remarks that the Complaint alleges the following personal conduct by Daigle: Daigle screamed at and blamed Plaintiff for others' errors,[1] authored a false evaluation,[2] imposed a singular desk-review requirement,[3] participated in the January 9th accusatory meeting,[4] and ignored Plaintiff's January 21st intent to file a complaint of race discrimination.[5] The Complaint alleges that Brown ignored Plaintiff's stated intent to file a discrimination complaint.

To state a claim, Plaintiff is required to allege that she: (1) was a member of a protected class; (2) was qualified for the position at issue; (3) was the subject of an adverse employment action; and (4) was treated less favorably than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances. *Paske v. Fitzgerald*, 785 F.3d 977, 985 (5th Cir. 2015); *Alleman v. Louisiana*, 698 F. Supp. 2d 644, 656 (M.D. La. Mar. 17, 2010).

As to the Individual Defendants and the § 1981 claims, Plaintiff identifies Connie Daigle as an "Area Admin Lead" and Melissa Brown as an "HR Business Partner." Defendants contend that Plaintiff alleges no facts to show that either could be held liable under § 1981. R. Doc. 1 at 1. *McLennan v. Oncor Elec. Delivery Co. LLC*, 2012 U.S. Dist. LEXIS 105858, at *12 (N.D. Tex. July 6, 2012). Defendants argue that because Plaintiff pleads no facts to show that Daigle or Brown were "essentially the same" as the employer

---

[1] Doc. 1, ¶ 13.
[2] *Id.* ¶ 14.
[3] *Id.* ¶ 16.
[4] *Id.* ¶ 15.
[5] *Id.* ¶¶ 15, 18.

for purposes of the challenged conduct, her § 1981 claims fail as a matter of law. *Felton v. Polles*, 315 F.3d 470, 480–81 (5th Cir. 2002).

Plaintiff maintains that § 1981 is not limited solely to employers because individual liability may attach where the defendant was personally involved in intentional race discrimination affecting contractual or employment rights. *CBOS W., Inc. v. Humphries¸* 553 U.S. 442, 445 (2008) (§ 1981 encompasses retaliation claims. Unlike Title VII, § 1981 is not limited by its terms to "employers," and its coverage of "all persons" support individual liability where a defendant was personally and intentionally involved in the race discrimination.) While the accusations directly involve Daigle and Brown, the Court notes that what is fatally absent from Plaintiff's Complaint is any racial animus that intentionally interfered with Plaintiff's employment.

Defendants argue that Plaintiff's § 1981 claim suffers an additional, independent flaw: § 1981 requires Plaintiff to plead that race was a but-for cause of the alleged injury. *Comcast Corp. v. Nat'l Ass'n of African American-Owned Media*, 589 U.S. 327, 333 (2020) ("plaintiff bears the burden of showing that race was a but-for cause of its injury"). Specifically, Defendants contend that the Complaint does not plead facts showing that, but for race, Plaintiff would not have received the workload, criticism, monitoring, evaluation, or termination she alleges. The Court agrees that Plaintiff has failed to plead that race was a but-for cause but because this case is in its infancy, the Court will allow Plaintiff to file an amended Complaint to cure these deficiencies.

As to Acuren, Defendants maintain that Plaintiff's claims fail because Plaintiff has failed to connect an adverse employment action to a protected characteristic and to identify

a comparator.  Defendants remark that Plaintiff alleges only that she merely suspects that she was treated discriminatorily.

Additionally, Plaintiff has failed to specify which white employees were treated differently, when, and how they were treated differently.  Plaintiff has not identified any comparators, or identified their position, and how they were similarly situated.  Also telling, is the fact that the Complaint does not allege any race-based remarks; the sole allegation that Plaintiff was the only African American at the branch office does not suggest that Acuren's actions were based on race. The Complaint alleges only speculative, conclusory allegations.

However, as noted by Plaintiff, no discovery has been conducted, and as such, the Court will allow Plaintiff to amend her Complaint to sufficiently allege the necessary factual allegation to cure these deficiencies in accordance with Rule 8 of the Federal Rules of Civil Procedure.

*Acuren Title VII and the LEDL*

The *McDonnell Douglas* framework applies equally to Title VII, § 1981, and LEDL disparate-treatment claims. *Jones v. Robinson Property Group, L.P.*, 427 F.3d 987, 992 (5th Cir. 2005) (providing the analysis of a claim for employment discrimination under Title VII and § 1981 is identical; *Baker v. FedEx Ground Package System, Inc.*, 278 Fed.Appx. 322, 327 (5th Cir. 2008) (stating Louisiana courts look to federal employment discrimination law when interpreting Louisiana employment laws.).

To state a *prima facie* case, Plaintiff was required to allege that she (1) is a member of a protected class; (2) was qualified for her position; (3) suffered an adverse employment

action; and (4) was treated less favorably than similarly situated employees outside her protected class under nearly identical circumstances. *Paske v. Fitzgerald*, 785 F.3d 977, 985 (5th Cir. 2015). Defendants argue that the Complaint fails at the fourth element, in that it fails to allege any facts supporting discriminatory motive at all.

Defendants assert that Plaintiff has failed to identify a comparator, or any employee outside her protected class with the same job duties, same supervisor, similar performance issues, or similar disciplinary history that was treated more favorably. The Court agrees. As noted by Defendants, Plaintiff's assertion that white employees were treated differently is a conclusory allegation unsupported by factual detail.

Plaintiff's Title VII and LEDL claims fail to allege race-based remarks, race-related conduct or any factual allegations that would even hint at a discriminatory motive. As previously noted, the lone allegation that Plaintiff was the only African-American at this particular branch office does not suggest that any actions by Acuren was based on race. However, due to the infancy of this case, and the lack of discovery conducted, the Court will allow Plaintiff to amend her Complaint to cure these deficiencies in accordance with Rule 8 of the Federal Rules of Civil Procedure.

*Article 2315 negligence and intentional infliction of emotional distress*

Defendants argue that Plaintiff does not establish a *prima facie* case of negligence due to the lack of duty or harm arising and suggests that workplace discord does not meet the standard for a claim of intentional infliction of emotional distress. Additionally, as to Plaintiff's negligence claims, Defendants note that Plaintiff's sole remedy lies under the Louisiana Worker's Compensation Act.

In order to recover for intentional infliction of emotional distress, a plaintiff must establish (1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct. *Nicholas v. Allstate Ins. Co.*, 1999-2522 (La. 8/31/00), 765 So. 2d 1017, 1022.

Conduct in the workplace, even if "calculated to cause some degree of mental anguish," will rarely be so severe that it will rise to the level of "outrageous conduct." *White v. Monsanto Co.,* 585 So. 2d 1205, 1210 (La. 1991); see also, *Deus v. Allstate Insurance Co.,*15 F.3d 506, 514 (5th Cir. 1994). Ordinarily, employment disputes, even those involving discrimination and harassment, will rise to the level of intentional infliction of emotional distress in only the most unusual of cases. *Booth v. Intertrans Corp.,*1995 U.S. Dist. LEXIS 7593 (E.D. La. 1995); see *Wilson v. Monarch Paper Co.,*939 F.2d 1138, 1144 (5th Cir. 1991). The employer's conduct must constitute "a pattern of deliberate, repeated harassment over a period of time" and "the distress suffered by the employee [is] more than a reasonable person could be expected to endure," then the employee has a cause of action. *Currier v. Entergy Servs.,* 2013 U.S. Dist. LEXIS 140918, *7- 8 (E.D. La. Sept. 30, 2013).

Here, the Court agrees with Defendants. Taking all of the factual allegations as true, the Court finds that Plaintiff's bare allegations do not rise to the level of extreme and outrageous conduct that would satisfy the elements of Plaintiff's claim. Accordingly, Plaintiff's allegations of an intentional infliction of emotional distress will be dismissed.

Plaintiff asserts that it would be premature to dismiss her negligent infliction of emotional distress against the Individual Defendants.  Plaintiff requests that she be allowed leave to amend her Complaint to clarify the source of the duty, the breach and the emotional harm alleged. Whether the conduct was through negligence or intentional, the Court finds that the alleged offending conduct does not rise to the level of outrageous and/or extreme conduct that would satisfy the elements of Plaintiff's claim, and as such will deny Plaintiff's request to amend her Complaint and dismiss this claim.

*Louisiana Whistleblower claim and retaliation*

Louisiana's Whistleblower Statute outlaws reprisal by an employer against an employee who, in good faith and after advising the employer of the violation of state law, discloses or threatens to disclose unlawfully discriminatory business practice, provides information to a public body investigating such violation of law, or objects to or refuses to participate in such an employment practice. *Seal v. Gateway Companies, Inc.*, 2002 U.S. Dist. LEXIS 279, 2002 WL 10456, 2 (E.D. La. 2002).

To state a whistleblower-retaliation claim under Section 23:967, a plaintiff must plead facts plausibly establishing that "(1) employer violated the law through a prohibited workplace act or practice; (2) plaintiff advised employer of the violation; (3) plaintiff then refused to participate in the prohibited practice or threatened to disclose the practice; and (4) plaintiff was fired as a result of her refusal to participate in the unlawful practice or threat to disclose the practice." *Richardson v. Axion Logistics, L.L.C.*, 780 F.3d 304, 306 (5th Cir. 2015).

Although the whistleblower statute itself does not define employer, district courts within the Fifth Circuit have applied the definition of "employer" provided under Louisiana's Employment Discrimination Law, Louisiana Revised Statute §23:302(2), to claims brought under the whistleblower statute, Louisiana Revised Statute §23:967. *See, eg.*, *Jones v. JCC Holding Co.*, 2001 U.S. Dist. LEXIS 7043, 2001 WL 537001, *3 (E.D. La. May 21, 2001) ("'Employer' means a person, association, legal or commercial entity, the state, or any state agency, board, commission, or political subdivision of the state receiving services from an employee and, in return, giving compensation of any kind to an employee."); *Langley v. Pinkerton's Inc.*, 220 F.Supp.2d 575, 580 (M.D. La. Sept. 4, 2002); *Jackson v. Xavier Univ. of Louisiana*, 2002 U.S. Dist. LEXIS 12890, 2002 WL 1482756 (E.D. La. July 8, 2002). Thus, Louisiana's Whistleblower statute covers only serious violations committed by the employer, not illegal acts of a mere co-worker. *Goulas v. LaGreca*, 945 F. Supp. 2d 693, 703 (E.D.L.A. 2013); *Ladd v. Law Enf't Dist.*, 2022-0212 (La. App. 4 Cir. 10/5/2022), 350 So. 3d 962, 967.

Defendant argues that Plaintiff has failed to allege that the Individual Defendants qualify as an "employer" under the statute but merely allege that Daigle and Brown were employees. As such, their status as co-employees puts them outside the statutory definition of "employer."  Louisiana Revised Statute 23:967 does not impose liability on individual employees, therefore, Plaintiff's whistleblower claims against the Individual Defendants will be dismissed.

As to Plaintiff's whistleblower claims against Acuren, Defendants maintain that Plaintiff has failed to allege that she engaged in a protected activity, such as reporting a

violation of state law to Acuren, providing information to a public body, or refusing to participate in unlawful conduct. Specifically, Defendants argue that Plaintiff's workplace disputes and performance-related issues do not constitute a protected activity under the statute.

Plaintiff argues that Louisiana Revised Statute 23:967(A) prohibits an employer from taking reprisal against an employee who, in good faith and after advising the employer, discloses or threatens to disclose a workplace practice that violates state law, or objects to such a practice. Plaintiff alleges that she advised Brown on January 21, 2025, of her intent to file a formal complaint against Daigle for racial discrimination, and that she was terminated about a week later.[6] Race discrimination in employment is itself a violation of Louisiana law and Louisiana Revised Statute 23:967 provides an employee's remedy.

Plaintiff alleges that she opposed or objected to a workplace practice that violates state law when she advised Brown of her intent to file a formal charge of discrimination. Plaintiff asserts that whether an actual violation occurred is a merits questions that is inappropriate for resolution on the pleadings.  Plaintiff remarks that whether Defendants retaliated against her involves fact-intensive questions, and requests that the Court grant her leave to amend the Complaint to more precisely identify the unlawful statutory provision that is implicated. The Court agrees with Plaintiff and will deny Defendant's motion to dismiss as to Acuren and Plaintiff's retaliation claim under the Louisiana

---

[6] Doc. ¶ ¶ 18-19.

Whistleblower Statute and require Plaintiff to amend her complaint to cure the deficiencies stated herein.

*Retaliation against Acuren under Title VII and the LEDL*

Defendants inform the Court that they withdraw their Motion to Dismiss Plaintiff's Title VII claims as to retaliation with a reservation to pursue a dismissal at a later date. Because a retaliation under the LEDL and Title VII are the same analysis, the Court will deny and defer a ruling as to Plaintiff's retaliation claims under both Title VII and LEDL.

*Race-based hostile work environment*

Defendants assert that Plaintiff has not pleaded a hostile work environment claim, noting that the Complaint only alleges additional work, criticism of work performed, monitoring, a low performance evaluation, an alleged accusatory meeting, co-worker critiques, and termination. The only allegation that even hints to discrimination is Plaintiff's conversation with Brown when she informed Brown that she intended to file a complaint based on her perception that she was being discriminated against based on her race.

The Fifth Circuit routinely rejects hostile work environment claims based on sporadic abrasive conduct, yelling, criticism, or workplace conflict where the plaintiff cannot show severe or pervasive harassment based on protected status. *See Turner v. Baylor Richardson Medical Center*, 476 F.3d 337, 347-48 (5th Cir. 2007); *Saketkoo v. Adm'rs of the Tulane Educ. Fund*, 31 F.4th 990, 1003 (5th Cir. 2022) ("[I]solated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment.").

As noted by Defendants, Plaintiff's allegations are nothing more than a series of nonracial workplace disagreements.  Again, the Complaint, read as a whole is completely lacking in racial slurs, or racial animus. Plaintiff argues that "[t]aken together, those allegations plausibly describe a workplace permeated with hostility, intimidation, and selective scrutiny severe or pervasive enough to alter the conditions of Plaintiff's employment." Again, the Court notes that this argument lacks any racial animus whatsoever. However, due to the infancy of this case and the lack of discovery, the Court will allow Plaintiff to amend her Complaint to address the deficiencies noted herein.

## CONCLUSION

For the reasons explained herein, the Court will grant Defendant's Motion to Dismiss as to Plaintiff's claims of race discrimination and retaliation under Title VII and the LEDL against the Individual Defendants, Plaintiff's whistleblower claims against the Individual Defendants, and Plaintiff's intentional and negligent infliction of emotional distress against the Individual Defendants and Acuren; otherwise, the Motion is denied as to all other claims, and the Court will require Plaintiff to amend her Complaint to cure the deficiencies noted herein.

**THUS DONE AND SIGNED** in chambers on this 10th day of July, 2026.

**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**